[Civil No. 3777.   Filed June 14, 1937.]

[68 Pac. (2d) 952.]

CYNTHIA STEWART and JAMES S. STEWART, Her Husband, Appellants, v. CRYSTAL COCA-COLA BOTTLING COMPANY, a Corporation, Appellee.

Messrs. Robles & Dodd, for Appellants.

Messrs. Conner & Jones, for Appellee.

McALISTER, C. J.—A bottle of coca-cola sold by the defendant, the Crystal Coca-Cola Bottling Company, a corporation, to the plaintiffs Cynthia Stewart and her husband, James S. Stewart, exploded, and a piece of the glass struck the hand of the former and injured it quite seriously. She and her husband brought suit for the damages suffered by them as a result of the explosion and at the close of their case the court granted a motion by the Bottling Company for a directed verdict in its favor and entered judgment thereon. Believing this order erroneous the Stewarts have brought the judgment here for review. The parties will be referred to here as they were in the trial court.

The plaintiffs were operating a restaurant in the city of Tucson and in connection therewith purchased from the defendant for sale to the public coca-cola, a beverage charged with carbon dioxide gas and prepared and bottled by the defendant in Tucson under

conditions and circumstances exclusively within its knowledge and under its control. The bottles in which the beverage was placed were manufactured in Los Angeles, California, and purchased there by the defendant, but the label, "Tucson, Arizona," appeared on the bottom of each bottle. The coca-cola was delivered by the defendant to the plaintiffs' place of business in cases and left on the floor near an ice-box in which it was placed for cooling. On July 16, 1935, about 11:30 A. M. the plaintiff, Cynthia Stewart, placed several bottles of this coca-cola in an upright position in the ice-box in ice water which covered the bottles to within two inches of their top and about 1:30 P. M. opened the box and took from it one of these bottles and handed it to a customer who returned it, stating that it was not cold enough. She set it back in the ice-box against a cake of ice which had been placed therein a short time before and began arranging the other bottles when, being shaken by their movement in the water, it turned over and exploded, a piece of the glass striking her right hand and seriously injuring it. She and the person to whom she offered it for sale were the only ones who had anything to do with the bottle after it left the possession of the defendant and they handled it in a careful and proper manner. The plaintiffs had been selling coca-cola for years and this was the first bottle they had ever seen explode in an ice-box.

In addition to these facts the plaintiffs alleged that the defendant was under a duty to them to prepare, bottle and furnish them coca-cola in a condition and in bottles that were safe and suitable to keep, cool and dispense in the usual manner but that it breached this duty by negligently and carelessly preparing, bottling and selling to them bottles of coca-cola which, together with their contents, were unsafe and dangerous for this purpose and that the said explosion

would not have happened had the defendant exercised due care therein.

In its answer the defendant admitted bottling the coca-cola and selling it to the plaintiffs but denied that it was negligent in bottling it.

It appeared from the testimony of the manager of the defendant, who was placed on the stand by the plaintiffs for cross-examination, that the defendant purchased the coca-cola syrup from the Western Coca-Cola Bottling Company and that it bottled the beverage, coca-cola, with an automatic bottling device; that the constituent elements thereof are coca-cola syrup and carbonated water, that is, water containing a percentage of carbon dioxide; that the contents of the syrup are unknown to the defendant but whatever they may be the syrup itself is not an explosive, nor is it such under normal conditions when mixed with carbonated water; that the defendant did not know whether the bottle in question was new or how long it had been in use or how many times it had been filled; that ninety per cent of defective bottles break on the first filling; that forty-three to forty-five pounds of gas pressure remain in the bottles after they are filled and capped; that the bottles filled and put out by defendant are inspected for defects by two persons, one before they are filled and one afterwards, 1200 to 1500 an hour being examined.

The two errors assigned are both based on the order directing a verdict. In the first the plaintiffs contend that the evidence was sufficient to take the question of the defendant's negligence to the jury under the doctrine of *res ipsa loquitur*, and in the second that it was such that the jury could have inferred from it that the explosion was caused either by the negligent overcharge of the bottle or by a defect in the bottle which the defendant could have discovered by a careful examination.

In support of the first assignment the plaintiffs rely upon the proposition that where a bottle of coca-cola or other beverage is prepared and bottled under the exclusive control of the bottler and by means exclusively within his knowledge, and it explodes and causes injury to the person handling it, the explosion being one that does not ordinarily occur when those handling it exercise due care, the doctrine of *res ipsa loquitur* applies, and the inference of negligence which the application of that rule raises is sufficient, in the absence of an explanation by the defendant, to justify a verdict for the plaintiff. The trial court held that the facts did not call for or even permit the application of this rule and there being no evidence without it upon which the jury could find the defendants guilty of negligence directed a verdict in its favor. The principal question presented by the appeal, therefore, is Was this order correct?

The complaint, it will be observed, charges general negligence only and proceeds upon the theory that the evidence brings the case within the doctrine of *res ipsa loquitur*. This rule is merely one of evidence and is applicable only when the instrumentality causing the injury is under the control of the defendant and the accident is of such a character that in the ordinary course of events would not happen if those having control of it use due care. Hence, when these factors appear it is reasonable to infer, in the absence of an explanation by the defendant, that the accident occurred because of a lack of proper care on his part. *San Francisco* v. *Circle Tours Sightseeing Co.,* 125 Or. 80, 265 Pac. 801. The fact that the plaintiff may, in a proper case, rely on this rule does not mean, however, that he is excused from proving negligence, for there is no exception to the rule that one seeking damages for an injury caused thereby must establish that negligence by a preponderance of the evidence. It is true

the purpose of the rule of *res ipsa loquitur* is to aid the plaintiff in a proper case in making this showing by supplying sufficient proof of negligence to require a defendant claiming that the accident did not occur through any fault of his to produce evidence to show this and take the case to the jury. *Sawyer* v. *People's Freight Lines, Inc.*, 42 Ariz. 145, 22 Pac. (2d) 1080. Instead of the law's demanding of the plaintiff the impossible in the matter of proof, facts about which he could not have any knowledge, it permits this rule to come to his rescue in certain cases and act as a substitute therefor. And it is the contention of the plaintiffs that they brought themselves within its purview when they showed that the preparation and bottling of the coca-cola was under the exclusive control and management of the defendant, that they had no knowledge whatever how either of these processes was performed, that the explosion under the circumstances was unusual, this being the first that ever occurred in the way it did during the many years plaintiffs had been selling coca-cola in Tucson, and that all those who had anything to do with the bottle after it was delivered to them by the defendant handled it with proper care, including the plaintiff, Cynthia Stewart, at the time of the accident. The only inference to be drawn from these facts, they say, is that the explosion was caused by the defendant in negligently overcharging the bottle with gas or in using a defective bottle and if this be true the rule of *res ipsa loquitur* applies and entitles them, either with or without an explanation by the defendant as to the cause of the accident, to go to the jury on the question of its negligence.

In support of this view the plaintiffs rely principally on *Payne* v. *Rome Coca-Cola Bottling Co.*, 10 Ga. App. 762, 73 S. E. 1087, a case in which a bottle of coca-cola, purchased by the brother of the plaintiff from a re-

tailer who had bought it from one Barnett to whom the defendant, the manufacturer, had sold it, exploded, and fragments of the glass destroyed plaintiff's eye. The principal defense was that the rule did not apply because the bottle was not at the time in its possession or under its control, but the court pointed out that the plaintiff had negatived a changed condition in the bottle by introducing evidence showing that neither the plaintiff nor anyone else who handled it after it left the manufacturer did anything to cause the explosion. Hence, the court said, the inference of negligence remained and by a process of elimination the only one left upon whom the blame could be fastened was the manufacturer who set the dangerous agency in motion. It then applied the rule of *res ipsa loquitur*, stating that the evidence was sufficient to make a *prima facie* case and require defendant to explain, but pointed out particularly that it expressed no opinion as to whether an inference of negligence on the part of the manufacturer would arise from the mere proof of an explosion and that it did not hold that the facts proved were such that they demanded that the jury find the defendant liable but merely that they called for an explanation by it.

That case is inapplicable here, because the evidence is not such that it justifies only the inference that the explosion was caused either by an overcharge of gas or a defect in the bottle. The witnesses for the plaintiffs testified, it is true, as they did in the Georgia case, that all who handled the bottle of coca-cola after it was delivered to the plaintiffs used proper care and, this appearing, the plaintiffs contend it is in point and should be followed. The evidence shows in addition, however, as stated above, the way in which the bottle was handled after it left the possession of the defendant as well as the manner in which it was inspected by the defendant for defects. The manager

of the defendant testified that a bottle of coca-cola was not an explosive under normal conditions, and there was no evidence that a similar occurrence had ever taken place. The five pieces into which the bottle was blown were in the possession of the plaintiffs up to the day of the trial but they made no effort at that time to prove by experts or otherwise that an examination of these, either separately or when put together as a bottle, disclosed any defects, such as thin spots or bubbles; they relied wholly on the fact that it exploded to show that it was defective or overcharged. It may be that the fact that a bottle charged with carbon dioxide exploded under the circumstances shown here is some evidence that the explosion was caused by an overcharge of gas or a defective bottle, yet it appears to be just as certain that it might have been caused by exposure of the bottle to sudden changes in temperature. In *Guinea* v. *Campbell*, Rap. Jud. Quebec, 22 C. S. 257, the court used the following language in discussing the effect on glass of such changes:

"... It is proved that glass is not a substance that becomes weakened by use, unless from the application of some physical force it is cracked. If it were cracked at the time of filling, the proof shows that it would explode in that operation, and so if the crack occurred at any time when the pressure existed within, it would immediately explode. I am driven to the conclusion that when the bottle in question . . . was placed in her refrigerator by the plaintiff, it was sound and strong enough to support the pressure of the liquid. What then, could have caused the explosion? The forces of nature as to the contraction and expansion of bodies by change of temperature are practically irresistible. Thus most of us have seen vessels burst, stone-work thrown out of place, etc., by the expansion which takes place in the conversion of water into ice. So we have seen glass vessels broken by putting hot water within them, and in this

case the thicker the glass the more likely the breakage. The cause of this phenomenon is that glass is in a high degree unelastic. When hot water is put into a tumbler it quickly raises the temperature of that portion of the glass with which it is in contact and causes expansion, while the outer surface of the tumbler remains unaffected. If the expansion of the inner surface proceeds beyond the degree of elasticity, breakage must occur. Where the glass is thin, changes of temperature, either from within or without, pervade almost immediately the whole substance of the glass, and thus breakages from that cause are much rarer. In the present case the proof shows that the bottle in question was placed in the refrigerator immediately under the ice box, which was very copiously supplied with ice. It may easily be assumed that the bottle was at a low temperature. On the other hand the day was warm, and when the refrigerator door was opened, air of a much higher temperature would come in contact with the bottles, and would raise the temperature of the outer surface of the glass, while the inside was kept cold by the liquid within, and the law of nature above referred to had its effect. . . . It recognizes facts as being caused by inevitable accident, and it relieves from responsibility when such has been the case. .,. .

"In consequence, I am of opinion that the accident, if not due to the imprudence of plaintiff in cooling the bottle too much and then exposing it to a current of warm air, was due to an inevitable accident for which defendant is not liable."

*Wheeler* v. *Laurel Bottling Works,* 111 Miss. 442, 71 So. 743, 744, L. R. A. 1916E, 1074, was a case in which a bottle of coca-cola burst at 1:00 A. M. in June as the plaintiff opened the lid of his ice box, the evidence showing that the bottle carried a pressure of sixty pounds and that a number of defective ones had been used, and the court refused to apply the rule of *res ipsa loquitur,* stating that it was possible the accident was due to "the inrush of the warm air of a June night."

In *Stone* v. *Van Noy Railroad News Co.*, 153 Ky. 240, 154 S. W. 1092, 1095, a bottle containing a soft drink exploded as the plaintiff, a newsboy on a train, lifted the lid of the ice-box in which he carried his drinks to take some out, and in an action by him against the news company and the cold storage company from whom the bottle was purchased, for damages for the injury received when the explosion occurred, the court upheld a judgment for the defendant entered upon a directed verdict, saying,

"Here the accident may have happened in one of several ways. The day was very hot, and the explosion may have resulted from the hot air coming in contact with the bottle. Again, a piece of ice may have fallen against the bottle and caused it to explode; or the explosion may have occurred because the bottle was too heavily charged, or the bottle itself was defective. The evidence being equally consistent with any one of these views, it follows that plaintiff failed to make out his case."

██ Inasmuch, therefore, as it is just as probable that the explosion was due to the action on glass of sudden changes in temperature as it is that it was caused by an overcharge of gas or a defective bottle, the rule of *res ipsa loquitur* does not apply. It is only where the existence of negligence is a more reasonable deduction from the facts shown that a plaintiff is permitted to call this rule to his aid. It "should not be allowed to prevail where, on proof of the occurrence, without more, the matter still rests on conjecture alone." *Loebig's Guardian* v. *Coca-Cola Bottling Co.*, 259 Ky. 124, 81 S. W. (2d) 910, 911; *Dail* v. *Taylor*, 151 N. C. 284, 66 S. E. 135, 28 L. R. A. (N. S.) 949; *Biddlecomb* v. *Haydon*, 4 Cal. App. (2d) 361, 40 Pac. (2d) 873, 874; 20 R. C. L. 185; *Firebaugh* v. *Seattle Elec. Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. Rep. 990, 2 L. R. A. (N. S.) 836; *Wheeler* v. *Laurel Bottling Works, supra.*

■ This court in *Sawyer* v. *People's Freight Lines,* 42 Ariz. 145, 22 Pac. (2d) 1080, 1082, quoted this sentence for the purpose of pointing out when *res ipsa loquitur* applies, "There are happenings attended by such circumstances as that the story of what happened cannot be told without disclosing the responsibility for what happened," and stated that the telling of what occurred in that case did not disclose who or what was responsible for the accident resulting in the death of the plaintiff's decedent. It occurs to us that nothing could be more in point, because the narration of the facts connected with the explosion in this case assures no one as to its cause but leaves the matter wholly in doubt. It is purely a guess whether it was due to an overcharge of gas or a defective bottle, either of which defendant might be responsible for, or whether it was caused by the action on glass of a sudden change in temperature, for which it was not. And this being true, the following statement in *Biddlecomb* v. *Haydon, supra,* is particularly pertinent:

"Neither does it [*res ipsa loquitur*] apply where the cause of the accident is unexplained and might have been due to one of several causes for some of which the defendant is not responsible."

■ Coca-cola, ordinarily a harmless article, does not often explode under normal conditions and the author of the annotation in 4 A. L. R. 1094 points out that "The decided weight of authority is to the effect that the rule of *res ipsa loquitur* is not applicable to the breaking, bursting or exploding of a container in which a commodity" of that character is sold. This applies, however, only where the negligence of the defendant must be inferred wholly from the explosion itself and nothing more. If the evidence discloses facts in addition to that occurrence, such, for instance, as the explosion of other bottles of coca-cola prepared by him about the same time or not too far prior

thereto, the application of the rule would be justified. *Coca-Cola Bottling Works* v. *Shelton,* 214 Ky. 118, 282 S. W. 778; *Stone* v. *Van Noy Railroad News Co., supra; Dail* v. *Taylor, supra.*

What we have said disposes of the second assignment without the necessity of any further discussion.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.